1
2
3
4
5
6
7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12  ROBERT KALANI,                          Case No.:13-CV-00734-LHK

13          Plaintiff,                      **ORDER GRANTING IN PART AND
                                            DENYING IN PART PLAINTIFF'S
14      v.                                  MOTION FOR SUMMARY
                                            JUDGMENT; DENYING
15  STARBUCKS CORPORATION,                  DEFENDANT'S MOTION FOR
                                            SUMMARY JUDGMENT**
16          Defendant.
                                            Re: Dkt. Nos. 75, 76
17

18          Plaintiff Robert Kalani ("Plaintiff" or "Kalani") brings this action against Defendant

19  Starbucks Corporation ("Defendant" or "Starbucks") for alleged violations of the Americans with

20  Disabilities Act. Before the Court are the parties' cross-motions for summary judgment. Having

21  considered the submissions of the parties, the record in this case, and the relevant law, the Court

22  hereby grants in part and denies in part Plaintiff's motion for summary judgment and denies

23  Defendant's motion for summary judgment.

24
25
26
27                                            1

28  Case No.: 13-CV-00734-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.  BACKGROUND

### A.  Factual Background

It is undisputed that Plaintiff is mobility impaired and uses a wheelchair. *See* Stipulation Regarding Undisputed Facts, ECF No. 75-6. On January 31, 2013, Plaintiff visited the Starbucks Coffee Store #6931, located at 1228 Camden Avenue in Campbell, California. *Id.* According to Plaintiff, on the day of his visit, he personally encountered several architectural barriers at the store that "interfered with if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered" at the store. First Am. Compl. ("FAC"), ECF No. 34, ¶ 10. *Id.* More specifically, Plaintiff alleges that the parking space was sloped, the surface of the access aisle was cracked and uneven, the cashier counter had insufficient room for Plaintiff to conduct his transaction, and the service counter where drinks were to be picked up was "extremely high." FAC ¶ 10. As a result of these architectural barriers, Plaintiff contends he required assistance from his wife to place, pay for, and receive his order, all of which caused him embarrassment. *Id.*

The Starbucks store was completely renovated in or about September 2014, continuing through October 2014. *See* Stipulation Regarding Undisputed Facts, ECF No. 75-6.

### B.  Procedural History

Plaintiff filed his original complaint on February 19, 2013, against Defendants Starbucks and Brentina, LLC. ECF No. 1. Starbucks answered on March 20, 2013, ECF No. 7, and Brentina, LLC answered on April 1, 2013, ECF No. 8. The parties stipulated to Plaintiff filing his First Amended Complaint on March 14, 2014. ECF Nos. 32, 34. Starbucks filed its amended answer on April 3, 2014, ECF No. 37, and Brentina, LLC filed its amended answer on April 4, 2014, ECF No. 38.

On September 26, 2014, Plaintiff filed a notice of settlement as to Defendant Brentina, LLC, ECF No. 63, and a stipulation of dismissal as to Defendant Brentina, LLC on October 27, 2014, ECF No. 66.

2

1    Plaintiff filed his motion for summary judgment on January 15, 2015. ECF No. 75.

2 Defendant Starbucks filed an opposition on January 29, 2015, ECF No. 78, and Plaintiff filed his

3 reply on February 5, 2015, ECF No. 79.

4    Defendant also filed its motion for summary judgment on January 15, 2015. ECF No. 76.

5 Plaintiff filed his opposition on January 29, 2015, ECF No. 77, and Starbucks filed its reply on

6 February 5, 2015, ECF No. 80.

7 **II.  LEGAL STANDARD**

8    Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

9 inferences in the light most favorable to the nonmoving party, there are no genuine issues of

10 material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

11 *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court

12 "does not assess credibility or weigh the evidence, but simply determines whether there is a

13 genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if

14 it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*,

15 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient

16 evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.* "If the

17 evidence is merely colorable, or is not significantly probative, summary judgment may be

18 granted." *Id.*

19    The moving party bears the initial burden of identifying those portions of the pleadings,

20 discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*

21 *Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial,

22 it must affirmatively demonstrate that no reasonable trier of fact could find other than for the

23 moving party, but on an issue for which the opposing party will have the burden of proof at trial,

24 the party moving for summary judgment need only point out "that there is an absence of evidence

25 to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509

26 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving

27    3

28

United States District Court
Northern District of California

1   party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that

2   there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

3   **III. DISCUSSION**

4        The parties move for summary judgment as to two discrete issues: (1) whether the post-

5   September/October 2014 renovated Starbucks store complies with federal and state accessibility

6   requirements; and (2) whether Plaintiff is entitled to injunctive relief or damages. The parties also

7   object to certain expert declarations. The Court begins by addressing the parties' evidentiary

8   objections before turning to the substance of the parties' motions.

9        **A.  Evidentiary Objections**

10       Defendant moves for summary judgment on Plaintiff's Americans with Disabilities Act

11  ("ADA") claims based on the expert declarations of Kim R. Blackseth. According to Ms.

12  Blackseth, the September 2014 and October 2014 renovations to the Starbucks store have removed

13  all of the architectural barriers identified by Plaintiff. Ms. Blackseth states that, as of November 4,

14  2014, "the facility is free of non-compliant issues." *See* Declaration of Kim R. Blackseth

15  ("Blackseth First Decl."), ECF No. 76-2, ¶ 9(b). In Ms. Blackseth's second declaration,

16  ("Blackseth Second Decl."), ECF No. 78-1, she opines that temporary obstructions are not

17  "barriers" and that the store therefore fully complies with the relevant ADA guidelines.

18       In opposition, Plaintiff objects to several paragraphs in Ms. Blackseth's declaration as

19  impermissible legal conclusions, and argues that Ms. Blackseth's conclusions are inadmissible.

20  *See* ECF No. 77 ("Pl. Opp."). Plaintiff also contends that the displays and other movable objects

21  located on the floor and counters do not fall within the exception for "temporary" obstructions

22  under 28 C.F.R. § 36.211(b).

23       Although an expert may not provide testimony on an ultimate legal issue, she may testify

24  as to findings that support the ultimate issue. *See Hangarter v. Provident Life & Accident Ins. Co.*,

25  373 F.3d 998, 1016–17 (9th Cir. 2004) ("While [the expert's] testimony that Defendants deviated

26  from industry standards supported a finding that they acted in bad faith, the expert] never testified

27                                           4

28  Case No.: 13-CV-00734-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law)."). Further, an expert may refer to the law in expressing an opinion without crossing the line into a legal conclusion. *See id.* However, mere "legal conclusions without underlying factual support . . . constitute 'unsupported speculation' and are therefore inadmissible." *Plush Lounge Las Vegas LLC v. Hotspur Resorts Nevada Inc.*, 371 F. App'x 719, 720 (9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)).

Here, Plaintiff specifically objects to the following statements:

A) Plaintiff's allegations in his First Amended Complaint (Court Docket No. 32-1) are without merit.

B) The subject store fully complies with all federal and state access regulations as Plaintiff ROBERT KALANI alleges them and as they relate to his disability of a mobility impaired person who uses an automatic wheelchair. As of November 4, 2014, the facility is free of non-compliant issues.

C) The disabled, van accessible parking spot and access aisle in front of the store complies with all applicable access requirements after the renovation. A proper accessible route is provided from this parking spot to the front door.

D) The point of sale (or cashier counter) at the location complies with applicable access requirements. Allegations of non-architectural items that may temporarily be placed in that are [sic] do not trigger violations of access regulations.

G) The store's disabled seating (interior and exterior) are movable tables. They can on occasion be moved around, but they are configured to meet access requirements and comply with all requirements included [sic] clearances and turning space.

H) Clear floor space is provided at the fire extinguisher.

I) The store's restroom complies with all access requirements including transfer clearance space in the toilet room.

*See* Blackseth First Decl. ¶ 9(A)–(D), 9(G)-(I).

First, the Court sustains Plaintiff's objections to paragraphs 9(A)–(D), 9(G)–(I). Conclusory opinions that the "facility is free of non-compliant issues," or that particular features, e.g., the accessible parking or point of sale, "compl[y] with all applicable access requirements,"

United States District Court
Northern District of California

1    constitute improper legal conclusions. *See, e.g.*, *Hangarter*, 373 F.3d at 1016–17; *see also Sharp*

2    *v. Islands Cal. Ariz. LP*, 900 F. Supp. 2d 1101, 1112 (S.D. Cal. 2012) (statement that the "waiting

3    area is accessible to wheelchair users and complies with all ADAAG requirements" constituted

4    improper legal conclusions). These statements do not identify any factual support for Ms.

5    Blackseth's opinions. The Court notes that Plaintiff properly does not object to ¶ 9(E), where Ms.

6    Blackseth opines that "[t]he pick-up counter . . . as modified now provides a length of 36 inches

7    and a height of 34 inches, as such it complies with access regulations." Blackseth First Decl. ¶

8    9(E). Unlike that statement, the objected-to paragraphs do not provide factual support for Ms.

9    Blackseth's expert conclusions and are also an insufficient basis on which to grant summary

10   judgment. *See Sharp*, 900 F. Supp. 2d at 1112.

11        Defendant relies on *Miller v. California Speedway Corp.*, 453 F. Supp. 2d 1193 (C.D. Cal.

12   2006), *reversed on other grounds by* 536 F.3d 1020 (9th Cir. 2008), to argue that Ms. Blackseth's

13   statements constitute admissible evidence. Even assuming the district court's order in *Miller*

14   remained good law, the Court concludes that *Miller* only undermines Defendant's argument. The

15   district court in *Miller* found that the plaintiff's expert's opinion addressed a matter of fact, even

16   though the expert used the same phrase as the relevant regulation. 453 F. Supp. 2d. at 1196. In

17   contrast, the district court concluded that the defendant's expert in *Miller* offered an impermissible

18   conclusion of law where the expert opined that "the subject seating does in fact comply with the

19   applicable" laws and regulations without any factual support for that conclusion. *See id.* Here, Ms.

20   Blackseth's opinions offer legal conclusions, e.g., "the point of sale . . . complies with applicable

21   access requirements," without addressing the factual bases for her opinions. As such, *Miller* is of

22   no assistance to Defendant.

23        The Court therefore finds that paragraphs 9(A)–(D), 9(G)–(I) are impermissible legal

24   conclusions lacking factual support and therefore inadmissible. *See Plush Lounge*, 371 F. App'x at

25   720.

26        Defendant objects to certain statements made in Plaintiff's expert Dawn Anderson's

27                                                        6

28   Case No.: 13-CV-00734-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Declaration, ECF No. 75-2. More specifically, Defendant argues that Ms. Anderson conducted

2    "unnoticed and unauthorized site inspections" in contravention of a court order. *See* Def. Reply at

3    2. Ms. Anderson apparently conducted an unnoticed site inspection on December 3, 2014, which

4    occurred after the close of expert discovery on November 21, 2014. Moreover, Defendant

5    contends that Ms. Anderson's November 13, 2014 site inspection, while before the close of expert

6    discovery, occurred after the Court-imposed site-inspection deadline of September 30, 2014. *See*

7    *id.*; ECF No. 42; *see also* Declaration of Dawn Anderson ("Anderson Decl."), ECF No. 75-2.

8         Here, while the Court acknowledges that Ms. Anderson conducted "unnoticed" site

9    inspections after the Court's September 30, 2014 deadline, the Court overrules Defendant's

10   objections. The Court notes that Ms. Anderson did conduct a site inspection with both Plaintiff's

11   and Defendant's counsel present on September 30, 2014, pursuant to the Court's order. *See*

12   Anderson Decl. ¶ 8. Additionally, Defendant cannot contest that the renovations to the Starbucks

13   store were not completed until late October 2014, after the Court's September 30, 2014 deadline.

14   At the time the Court imposed the September 30, 2015 site-inspection deadline, Defendant

15   Starbucks represented to the Court that renovations would occur between September 7, 2014 and

16   September 19, 2014. *See* Joint Case Management Statement, ECF No. 47. The Court's September

17   30, 2014 deadline assumed that Defendant would have completed all renovations, giving Plaintiff

18   an opportunity to determine whether the renovations fully addressed the identified barriers. The

19   Court therefore overrules Defendant's objection based on the Court's site-inspection deadline.

20        Moreover, Defendant offers no reason why Ms. Anderson's unnoticed December 2014

21   visit prejudiced Defendant. During both Ms. Anderson's November 13, 2014 and December 3,

22   2014 site inspections, Ms. Anderson evaluated publicly accessible areas of the Starbucks store and

23   observed the continued presence of barriers that Plaintiff had previously identified. *See* Anderson

24   Decl. ¶¶ 10–24 (describing point of sale and pick up counters, restroom, and public seating areas).

25   Defendant has not identified any harm that it has suffered as a result of Ms. Anderson's

26   subsequent visits, and in light of the limited scope of Ms. Anderson's observations, all of which

27                                                        7

United States District Court
Northern District of California

1    correspond to previously identified barriers, the Court finds no harm to Defendant. *See Doran v.*
2    *7-Eleven, Inc.*, 524 F.3d 1034, 1038 n.2 (9th Cir. 2008) (discussing district court's denial of
3    motion to strike expert's declaration based on unnoticed site inspections following close of expert
4    discovery).

5    In sum, the Court sustains Plaintiff's objections to ¶¶ 9(A)–(D), 9(G), and 9(I) of Ms.
6    Blackseth's declaration and overrules Defendant's objections to ¶¶ 10–20 and 23 of Ms.
7    Anderson's declaration.

8    **B.  Post-Renovation Barriers**

9    Title III of the ADA "prohibits discrimination on the basis of disability in the 'full and
10   equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of
11   anyplace of public accommodation' with a nexus in interstate commerce." *Oliver v. Ralphs*
12   *Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42 U.S.C. §§ 2000a(b), 12182(a)). The
13   ADA requires that facilities altered after January 26, 1992, "be altered in such manner that the
14   altered portion of the facility is readily accessible to and usable by individuals with disabilities."
15   28 C.F.R. § 35.151(b)(1). A facility is generally "readily accessible" within the meaning of the
16   ADA if it complies with the applicable Guidelines. *Oliver*, 654 F.3d at 905. Alterations to
17   facilities undertaken after March 15, 2012 are subject to the 2010 ADA Standards for Accessible
18   Design ("2010 Standards"). *See* 28 C.F.R. § 35.151(c)(5)(i); *Fortyune v. City of Lomita*, 766 F.3d
19   1098, 1103 (9th Cir. 2014).

20   Moreover, to prevail on a Title III discrimination claim, a plaintiff must show that (1) she
21   is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases,
22   or operates a place of public accommodation; and (3) the plaintiff was denied full and equal
23   treatment by the defendant because of her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730
24   (9th Cir. 2007).

25   Here, Defendant does not dispute that Plaintiff would otherwise satisfy the elements of a
26   Title III discrimination claim based on Plaintiff's January 31, 2013 store visit, but contends that

27   8

28   Case No.: 13-CV-00734-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Defendant's renovations to the Starbucks store have brought all of Plaintiff's identified barriers

2    into compliance with the 2010 Standards. As discussed above, the Court has excluded several

3    paragraphs of Defendant's expert's declaration as impermissible legal conclusions that cannot

4    support a finding of summary judgment.

5            Plaintiff contests whether Defendant's renovations have actually brought the store into full

6    compliance with the 2010 Standards. More specifically, Plaintiff both opposes Defendant's motion

7    for summary judgment and moves for summary judgment based on the presence of movable

8    displays and items that are placed on and near the counters that allegedly impede access to the

9    counters or apparently affect the corresponding width or length of the counters or pathways. The

10   Court begins by addressing a legal dispute between the parties as to whether these movable objects

11   fall within an exception to the ADA Guidelines, before turning to the specific barriers at issue.

12           **1.  28 C.F.R. § 36.211**

13           The parties dispute whether "temporary" or "movable" objects that may cause a feature

14   like an access path or a counter to measure less than the legally required width or length constitute

15   actionable barriers to access. More specifically, Defendant argues that Plaintiff's claims fail as a

16   matter of law because the "movable displays" of which Plaintiff complains are exempted by

17   § 36.211(b). Plaintiff contends that § 36.211(b) refers to only temporary barriers that are "due to

18   maintenance or repairs," and cannot be read to cover the types of movable objects at issue in the

19   instant litigation, e.g., display baskets of goods that are placed near counters for patrons to view.

20           Section 36.211, titled "Maintenance of accessible features," provides:

21                   (a) A public accommodation shall maintain in operable working
22                   condition those features of facilities and equipment that are required
                     to be readily accessible to and usable by persons with disabilities by
23                   the Act or this part.

24                   (b) This section does not prohibit **isolated or temporary
                     interruptions** in service or access **due to maintenance or repairs**.

25   28 C.F.R. § 36.211 (emphasis added).

26           Here, the Court concludes that Defendant's interpretation of § 36.211(b) is contrary to the

27                                                    9

plain language of the regulation. Section 36.211(a) requires that once a facility is brought into compliance with the relevant standards, accessibility be maintained so that persons with disabilities may continue to access and use the facility. Section 36.211(b) provides a narrow exception for "isolated or temporary interruptions in service or access *due to maintenance or repairs.*" (emphasis added). As Plaintiff correctly notes, the Department of Justice ("DOJ") responded to comments regarding the scope of § 36.211 in its section analysis during the rulemaking process by stating that:

> [A]llowing obstructions or "out of service" equipment to persist beyond a reasonable period of time would violate this part, as would repeated mechanical failures due to improper or inadequate maintenance. **Failure of the public accommodation to ensure that accessible routes are properly maintained and free of obstructions,** or failure to arrange prompt repair of inoperable elevators or other equipment intended to provide access, **would also violate this part.**

Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544-01 (July 26, 1991) (emphasis added). The Court agrees with Plaintiff that § 36.211, as analyzed by the DOJ, does not create a wholesale exception to ADA accessibility requirements if the obstruction is not permanently affixed to a surface. Read as a whole, and in light of the DOJ's commentary, the Court concludes that "temporary" should be understood as referring to the duration of time an obstruction might exist, not whether the obstruction might theoretically be movable.

Defendant argues only that the objects of which Plaintiff complains, display baskets and items, are "movable" and therefore "temporary" under § 36.211. While Defendant uses the word "movable" interchangeably with "temporary" to describe the display baskets and other obstructions placed on and around the point of sale counter, the Court finds no support for Defendant's interpretation of § 36.211 in either the language of the regulation itself or any other legal authority. Moreover, the only other district court in this Circuit to specifically address this issue similarly concluded that "nothing in the DOJ's . . . commentaries or its technical assistance

10

United States District Court
Northern District of California

materials—nor in the ADA itself, its implementing regulations or the ADA Accessibility Guidelines . . . state or imply that 'movable obstructions' cannot violate the ADA." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 870 F. Supp. 2d 995, 1006 (E.D. Cal. 2012). The Court agrees with the *Chapman* court that the term "temporary" as used in § 36.211 is more akin to "transitory," because the regulations require an "intention of removing [the barrier or obstruction] as soon as possible." *See id.* at 1008 (citing the DOJ's 1993 Technical Assistance Manual). This interpretation corresponds not only with the explicit analysis and explanation provided by the DOJ, but also § 36.211(b)'s requirement that the temporary interruption in access be "due to maintenance and repairs," i.e., events that are intended to last for a determined period of time before ending.

In sum, the Court concludes that in order for a "temporary" obstruction to fall under the § 36.211(b) exception, the obstruction or interruption in service or access must be "due to maintenance or repairs," and requires more than a mere showing that the obstruction or barrier is movable. Defendant has put forth no evidence or argument that the obstructions that Plaintiff identifies are related to maintenance or repairs. The Court will address this defense in the context of each barrier below, but as a general matter concludes that neither Defendant's motion for summary judgment nor opposition to Plaintiff's motion for summary judgment can rely on Defendant's erroneous interpretation of the scope of § 36.211(b).

### 2. Individual Barriers

#### a. Point of sale counter

In his FAC, Plaintiff alleges that the counter where patrons order and pay for drinks ("point of sale") does not conform to the 2010 Standards, which requires the counter be at least 36 inches long and a maximum of 36 inches tall. Defendant contends that the point of sale counter now conforms to the 2010 Standards. In addition to arguing that the counter is an insufficient length, Plaintiff also claims that the placement of large display baskets has created an "alcove" that obstructs access to the counter.

Defendant has submitted Ms. Blackseth's statement that the point of sale counter stands "at

11

United States District Court
Northern District of California

1    a height of 34 inches with a length of 36 inches." *See* Blackseth Second Decl. ¶¶ 8(D). In contrast,

2    Plaintiff's expert, Ms. Anderson, states that the length of the service counter is "only 35 inches

3    measured between the two fixed obstructions at the counter." Pl. Opp. at 3 (citing Anderson Decl.

4    ¶ 12.). Plaintiff further argues that the point of sale counter likely measures even less than 35

5    inches when taking into account other "reoccurring items relocated within the transaction service

6    counter area," including "blackboard bins," foodstuffs for sale such as bananas, cookies, and

7    candy, and "permanently displayed" consumer goods such as cash cards, music, and candy. *See*

8    Anderson Decl. ¶ 13; Pl. Reply at 5. When the counter is measured with these additional items

9    covering the counter surface, Ms. Anderson concluded the point of sale counter measured only 8

10   inches. *See* Pl. MSJ at 8; Anderson Decl. ¶ 13, Exh. E.

11          Defendant argues that these objects and display items are "movable" and therefore

12   exempted under § 36.211(b). *See* Def. Opp. at 2 (citing Blackseth Second Decl. ¶ 8(D)). Ms.

13   Blackseth's determination that the counter measures 36 inches appears to rely on the assumption

14   that "movable" objects are "temporary." *See* Blackseth First Decl. ¶ 9(D) ("Allegations of non-

15   architectural items that may temporarily be placed [on the counter] . . . do not trigger violations of

16   access regulations."). However, Defendant has put forth no evidence that the blackboard bins,

17   foodstuffs, or consumer goods placed on the point-of-sale counter are "due to maintenance or

18   repair," or that these are "isolated" interruptions in access.

19          To the contrary, Defendant's own designated representative, Antoinette Westerfelt,

20   testified that managers are instructed to place sale and promotional items, so-called "impulse

21   buys," on the transaction counter. *See* Declaration of Tanya E. Moore in support of Plaintiff's

22   motion for summary judgment ("Moore Decl."), ECF No. 75-4, Exh. B ("Westerfelt Depo.") at

23   26:21–27:16 (discussing instructions from "corporate" as to placement of sale and promotional

24   items on point of sale counter). In addition to this testimony, Plaintiff also notes that his expert,

25   Ms. Anderson, has made multiple visits to the store and that the point of sale counter "has always

26   measured less than the required 36 inches in length" due to the placement of fixed point objects

27                                                      12

28   Case No.: 13-CV-00734-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   like the cash registers, and the various display and sale items. Pl. Reply at 5; Anderson Decl. ¶¶ 7–

2   13.

3          Additionally, Plaintiff also contends that Defendant's placement of large baskets and

4   produce displays "created an alcove of more than 15 inches with a space of less than 60 inches

5   between the two side obstructions." Anderson Decl. ¶ 16; Pl. MSJ at 14. According to Plaintiff,

6   these obstructions, placed in front of the point of sale counter, would prevent or severely hamper

7   an individual in a wheelchair from making a parallel approach to the counter. *See* Pl. MSJ at 15;

8   Declaration of Robert Kalani in support of motion for summary judgment ("Kalani Decl."), ECF

9   No. 75-2, ¶ 13(a). The 2010 Standards require that "[w]here a clear floor or ground space is

10  located in an alcove or otherwise confined on all or part of three sides, additional maneuvering

11  clearance shall be provided." 2010 Standards 305.7. More specifically, where patrons are expected

12  to make a parallel approach into the alcove and the depth of the alcove is 15 inches or more, there

13  must be a minimum of 60 inches of width. 2010 Standards 205.7.2.

14         Other than its reliance on § 36.211(b)'s exemption for temporary barriers, Defendant does

15  not otherwise dispute or contest that the large baskets placed in front of the pick up counter would

16  create an alcove, that the width between the two objects was less than the required 60 inches, or

17  that Plaintiff would have difficulty maneuvering into the alcove. *See* Def. Opp. 2. In contrast, Ms.

18  Anderson measured the alcove created by the placement of the baskets and displays on both

19  November 13, 2014, and December 3, 2014, and concluded that the alcoves had a depth of greater

20  than 15 inches and a width of less than 60 inches. *See* Pl. MSJ at 14–15; Anderson Decl. ¶¶ 16, 17.

21         Here, the Court concludes that Defendant has failed to show "that there is an absence of

22  evidence to support" Plaintiff's claim as to length of the point of sale counter or the alcoves

23  created by Defendant's displays. *See Celotex Corp.*, 477 U.S. at 325. The Court therefore denies

24  Defendant's motion for summary judgment as to the point of sale counter. The Court further finds

25  that Plaintiff has put forth sufficient evidence to show that no reasonable trier of fact could

26  conclude that the point of sale counter satisfies the 36 inch length requirement or the minimum 60

27                                              13

28  Case No.: 13-CV-00734-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

inch alcove width requirement under the 2010 Standards. The Court therefore grants Plaintiff's motion for summary judgment as to the point of sale counter.

### b.  Ramp from the public way

Plaintiff contends that the slope of the newly constructed exterior ramp exceeds the percentage permitted under the 2010 Standards. Pl. MSJ at 17–18. The parties agree that under 2010 Standards 405.7.1, the ramp slope cannot exceed 2.08 percent.

Here, both parties' experts measured the slope of the exterior ramp and came up with two different measurements. Defendant's expert, Ms. Blackseth, declares that the cross-slope is "less than 2%" and that this cross-slope was "checked on October 29, 2014." Blackseth First Decl. ¶ 9(F). In contrast, Plaintiff's expert, Ms. Anderson, declares that she measured the cross-slope of the ramp on November 13, 2014, and concludes that the cross-slope is 2.5 percent. Anderson Decl. ¶ 18. While Plaintiff complains that Ms. Blackseth's statement is insufficiently precise, the Court concludes that there is a genuine dispute as to the cross-slope of the exterior ramp.

The Court therefore denies both Plaintiff's and Defendant's motions for summary judgment as to the ramp from the public way.

### c.  Exterior seating area

Defendant provides an exterior seating and dining area that includes a single designated accessible table. Plaintiff moves for summary judgment on the grounds that given the number of tables, umbrella stands, and chairs in the confined space, "there is no configuration that will allow a minimum of 36 inches of clearance as required," or the minimum of 30 inches by 48 inches of clear ground space for the approach to the accessible table as required under the 2010 Standards. Pl. MSJ at 18.

In moving for summary judgment, Defendant does not dispute that Plaintiff has identified the applicable standards for required clearance (36 inches) or clear ground space (30 inches by 48 inches). Rather, Defendant relies on ¶ 9(G) of Ms. Blackseth's declaration, which states that the tables "are configured to meet access requirements and comply with all requirements including

United States District Court
Northern District of California

United States District Court
Northern District of California

1   clearances and turning space," and are "movable." Blackseth First Decl. ¶ 9(G). As discussed

2   above, the Court finds this paragraph to be an impermissible legal conclusion which provides no

3   factual support for Ms. Blackseth's conclusion. Nor do the attached exhibits to Defendant's reply

4   in support of its motion for summary judgment provide any additional evidence supporting

5   Defendant's argument that the exterior seating area provides the required 36 inches of clearance

6   and clear ground space of 30 inches by 48 inches. *See* Def. Reply., Exh. A.

7           In support of Plaintiff's motion for summary judgment on this barrier, Plaintiff's expert

8   describes the location of the accessible table in a "nook" in the furthest corner along an exterior

9   wall, provides a photograph of the placement and location of the various tables, umbrella stands,

10  and chairs, and concludes that given the number of objects within the walled-off exterior seating

11  area, it would be physically impossible to provide the requisite clearance and clear ground space.

12  *See* Anderson Decl. ¶ 19, Exh. K. This is sufficient evidence to support Plaintiff's motion for

13  summary judgment as to the exterior seating area. Plaintiff has adduced specific evidence showing

14  that whether or not the tables are "movable," it would be impossible, given the number of tables,

15  umbrella stands, and chairs located in the walled-off seating area, to configure the seating area to

16  provide the required clearance and clear ground space. As such, the Court finds that no reasonable

17  trier of fact could conclude that Defendant's exterior seating area complies with the 2010

18  Standards or that the "movable" chairs, tables, and umbrella stands fall under the exception for

19  temporary obstructions under § 36.211(b). The Court therefore grants Plaintiff's motion for

20  summary judgment as to the exterior seating area.

21          **d.   Interior Tables**

22          Plaintiff argues that the two designated interior tables are "improperly located" and "lack

23  amenities provided at non-accessible tables." Pl. MSJ at 19. According to Plaintiff, the accessible

24  tables are "configured such that an individual in a wheelchair must face a wall (i.e., cannot face

25  'out' to view the ongoings at the Store)." *Id.* Other patrons at the non-accessible tables have a

26  variety of seating options, including seats that allow them to view the store or interact with other

27                                                  15

patrons. *Id.* Plaintiff contends that forcing disabled patrons to sit facing a wall when other patrons have choices of whether to sit facing the store, other patrons, or the wall, is an unequal accommodation that is different or separate from those provided to able-bodied patrons. *Id.* (citing 42 U.S.C. § 12182(b)(1)(A)(ii)–(iii)).

Defendant offers no contrary argument in either its motion for summary judgment or its opposition to Plaintiff's motion for summary judgment. While there appears to be no factual dispute as to whether the designated accessible tables require a patron to face sitting a wall, the Court finds that there is a genuine factual dispute as to whether the ability to sit facing the store is a "privilege" or "service" offered to other patrons. *Cf. Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n.4 (9th Cir. 1994) (district court must determine there are no material issues of fact even if motion for summary judgment is unopposed). Plaintiff offers no authority, and the Court has found none, concluding that the ability to sit facing the interior of a store is a "privilege" or "service" as a matter of law. Plaintiff's arguments in support of his motion for summary judgment reveal that there is a genuine dispute of material fact as to whether choices in seating constitute a "privilege" or "service." It is also not evident based on Plaintiff's evidence that no reasonable trier of fact could conclude that the two accessible tables are not sufficiently equivalent accommodations under Title III.

The Court therefore denies Plaintiff's motion for summary judgment as to the configuration of the interior tables. To the extent Defendant may believe it has moved for summary judgment on this claim, the Court also denies Defendant's motion.

### e. Floor clearance at the fire extinguisher

The parties do not dispute that the 2010 Standards require clear floor space at the fire extinguisher to allow patrons in wheelchairs to access the fire extinguisher. Under the 2010 Standards, turning spaces must comply with either 304.3.1 for circular spaces or 304.3.2 for T-shaped spaces. Defendant does not contest that the standard for T-shaped spaces is as follows:

16

> The turning space shall be a T-shaped space within a 60 inch (1525 mm) square minimum with arms and base 36 inches (915 mm) wide minimum. Each arm of the T shall be clear of obstructions 12 inches (305 mm) minimum in each direction and the base shall be clear of obstructions 24 inches (610 mm) minimum. The space shall be permitted to include knee and toe clearance complying with 306 only at the end of either the base or one arm.

2010 Standards 304.3.2.

Defendant's expert states that "clear floor space is provided at the fire extinguisher." Blackseth First Decl. ¶ 9(H). As discussed above, the Court finds this to be an unhelpful and impermissible legal conclusion. In Ms. Blackseth's second declaration, attached to Defendant's opposition, she states that "more than 36 inches of clear floor space is provided in the area near the fire extinguisher." Blackseth Second Decl. ¶ 8(H). Plaintiff's expert states that the floor area at the fire extinguisher does not provide the minimum 36 inches of clear space to make a 60 inch "T" turn because there are display bins placed in front of the extinguisher and display shelving that obstructs turning clearances. Anderson Decl. ¶ 21. Ms. Anderson also provides a photograph of the fire extinguisher which depicts the obstructions described in her declaration. *Id.*, Exh. N.

Here, the Court concludes that Defendant has failed to show "that there is an absence of evidence to support" Plaintiff's claim as to the 36 inches of clear space required in front of the fire extinguisher. *See Celotex Corp.*, 477 U.S. at 325. The Court therefore denies Defendant's motion for summary judgment as to the floor space in front of the fire extinguisher.

The Court also concludes that there is a genuine factual dispute as to whether there is sufficient clear floor space in front of the fire extinguisher. It is not clear from Plaintiff's evidence whether the display baskets placed near the fire extinguisher might actually fall within § 36.211(b)'s exception for temporary obstructions. *See* Anderson Decl., Exh. N. Unlike with the displays in front of the point of sale counter, Plaintiff does not argue or otherwise provide any evidence that Defendant regularly or intentionally places the baskets by the fire extinguisher. In light of Ms. Blackseth's conclusion that "more than 36 inches of clear floor space is provided," the Court finds there is a genuine factual dispute. The Court therefore denies Plaintiff's motion for

17

summary judgment as to the floor space in front of the fire extinguisher.

### f. Proper transfer clearance in the restroom

Plaintiff argues that the freestanding trashcan placed in the accessible bathroom violates the 2010 Standards for 48 inches of clear floor space required to approach any "element" in the restroom and the 60 inch diameter floor space required for a wheelchair to turn around in the restroom. 2010 Standards 603.2.1, 304; Pl. MSJ at 20.

In both moving for summary judgment and in opposition to Plaintiff's motion for summary judgment, Defendant relies on Ms. Blackseth's statement that:

> The store's restroom complies with all access requirements including transfer clearance space in the toilet room. Plaintiff's expert often references a 'movable' trash receptacle that is not an architectural 'barrier' for purposes of her measurements. This trash receptacle does not interfere with the lawful clear space that is provided for in the subject store's restroom.

Blackseth Second Decl. ¶ 8(I). The Court finds this statement to be both unhelpful in determining whether there is any factual support for Ms. Blackseth's conclusion that the restroom satisfies 2010 Standards 603.2.1 and 304, and to be impermissible legal conclusions for the same reasons the Court excluded ¶ 9(I) of Ms. Blackseth's first declaration.[1] Plaintiff's expert states that during her September 30, 2014 visit to the store, she noted the freestanding trashcan was within the required 30 inch by 48 inch clear floor space of the toilet seat cover dispenser. Anderson Decl. ¶ 22. Ms. Anderson subsequently prepared an expert report stating there was insufficient maneuvering room and recommended that Defendant install a recessed trashcan. *Id.* Following renovations, Ms. Anderson again found the freestanding trashcan in the accessible bathroom, and concluded that based on the size of the trashcan and size of the restroom, "there is no location within the toiletroom where a free-standing trash receptacle can be located such that the clear floor

---

[1] Ms. Blackseth's statement regarding the transfer clearance in her first declaration ends after the first sentence quoted above. *See* Blackseth First Decl. ¶ 9(I). The Court has found ¶ 9(I) of Ms. Blackseth's first declaration to be an impermissible legal conclusion. To the extent ¶ 8(I) of Ms. Blackseth's second declaration is identical and also attempts to make a legal conclusion as to whether "movable" objects can constitute barriers, the Court similarly finds it to be impermissible.

18

Case No.: 13-CV-00734-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1  space and/or maneuvering clearances will not be obstructed within the room." *Id.* ¶ 24.

2      Here, the Court denies Defendant's motion for summary judgment as Plaintiff has put for

3  specific evidence supporting his claim that there is insufficient transfer clearance and maneuvering

4  space in the restroom.

5      Moreover, given the absence of competent evidence put forward by Defendant and the

6  specific evidence adduced by Plaintiff, the Court finds that no reasonable trier of fact could

7  conclude that the restroom complies with 2010 Standards 603.2.1 and 304. As discussed

8  previously, the fact that the trashcan is "movable" does not necessarily bring it within the scope of

9  § 36.211(b)'s exception. Additionally, the 2010 Standards require that a wheelchair user be able to

10  access features, such as a toilet cover dispenser, and also be able to turn around within the

11  restroom in order to enter, exit, and otherwise use the facilities. As Plaintiff's expert has stated, the

12  presence of the "movable" freestanding trashcan would *always* interfere with the required floor

13  space because there is no location where the trashcan could be placed that would allow an

14  individual in a wheelchair to both have the requisite floor space to approach an element, such as

15  the toilet cover dispenser, and also make a full circular turn. *See* Anderson Decl. ¶ 24. Defendant

16  has put forth no contrary evidence, only the legal conclusion that "movable" objections cannot

17  constitute architectural barriers. As the Court has already rejected that legal argument, the Court

18  grants Plaintiff's motion for summary judgment as to the floor clearance and maneuvering

19  clearance in the restroom.

20      **3.  Injunctive Relief**

21      Defendant makes two arguments as to why Plaintiff is not entitled to injunctive relief: (1)

22  that Plaintiff lacks standing to pursue injunctive relief; and (2) the alleged barriers no longer exist.

23  The Court addresses each argument in turn.

24      First, as to standing for injunctive relief, Defendant does not dispute that Plaintiff has

25  otherwise satisfied the Article III standing requirements of an injury-in-fact, causation, and

26  redressability. *See* Def. Opp. at 3; *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149

United States District Court
Northern District of California

United States District Court
Northern District of California

(2010). Instead, Defendant argues only that Plaintiff has not established a likelihood of future injury, as required to show standing to pursue injunctive relief.  Standing for injunctive relief under the ADA requires either (1) "demonstrating deterrence" or (2) "demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011) (en banc).

Here, Defendant contends that because Plaintiff resides 137.5 miles away from the Starbucks store in question, Plaintiff cannot show an intent to return. *See* Def. Opp. at 3–4. While distance is certainly a factor to consider in determining whether a plaintiff has demonstrated "an intent to return to a noncompliant facility," distance alone is insufficient to defeat injunctive standing as a matter of law. *See, e.g.*, *Doran*, 524 F.3d at 1037–38 (holding that plaintiff had shown an intent to return to 7-Eleven 550 miles away from his home).

Moreover, the Court finds that Plaintiff has put forth evidence demonstrating his intent to return to the Starbucks store in Campbell. Plaintiff has testified that he has visited the store on other occasions, and that the store is "conveniently located off the freeway." Kalani Decl. ¶ 14. Plaintiff states that he frequently visits the area where the store is located in order to meet with his attorney, attends a yearly "Abilities Expo" in San Jose, attends meetings of the San Jose chapter of the Californians for Disability Rights organization that holds meetings in San Jose, and has family nearby that he visits regularly. *Id.* ¶ 15. Plaintiff has also testified that he will continue to patronize the Starbucks store when he is in the area. *Id.* ¶ 17. These facts are sufficient to support a showing that Plaintiff intends to return to the Starbucks store. *See, e.g.*, *Doran*, 524 F.3d at 1037–38; *D'Lil v. Best Western Encina Lodge & Suites*, 598 F.3d 1031, 1037 (9th Cir. 2008) (discussing similar cases).[2] The Court therefore concludes that Plaintiff has shown both an injury-in-fact based on his

---

[2] In light of controlling Ninth Circuit authority on this question, the Court finds Defendant's citations to contrary out-of-circuit district court cases to be unpersuasive. *See* Def. Opp. at 3–4. Moreover the two district court decisions from within this Circuit that Defendant cites pre-date the Ninth Circuit's decisions in *Doran* and *D'Lil.*

20

1   January 2013 visit and an intent to return to the Starbucks store.

2       Second, Defendant argues that Plaintiff is not entitled to injunctive relief as a matter of law

3   because the alleged barriers no longer exist. As the Court has granted summary judgment as to

4   some of Plaintiff's claims and denied Defendant's motion for summary judgment as to all

5   individual barriers, this argument lacks merit. *See* Def. MSJ at 3–4.

6       In sum, the Court finds that Plaintiff has standing to seek injunctive relief.

7   **4. State law damages**

8       Plaintiff contends he is entitled to damages under the Unruh Civil Rights Act ("Unruh

9   Act"). Under the Unruh Act, any violation of the ADA is an automatic violation of the Unruh Act.

10  *See* Cal. Civ. Code § 51(f). In order to recover damages, a plaintiff must demonstrate that she

11  suffered difficulty, discomfort, or embarrassment as a result of her encounter with a barrier. *Id.*

12  § 55.56. Plaintiff contends that an Unruh Act plaintiff is entitled to a minimum of $4,000 in

13  statutory damages for a violation of the Unruh Act. *Id.* 52(a). Plaintiff seeks only $4,000 in the

14  instant case. *See* Pl. MSJ at 22.

15      Defendant moves for summary judgment as to Plaintiff's damages on the grounds that

16  Plaintiff is not entitled to damages following Defendant's renovations to the store. According to

17  Defendant, as no barriers currently exist, Plaintiff is not entitled to damages under the Unruh Act.

18  *See* Def. MSJ at 5; Def. Opp. at 5–6. Putting aside whether Plaintiff would still be entitled to

19  damages for past violations of the ADA under the Unruh Act, the Court finds that Plaintiff is

20  entitled to damages under the Unruh Act for the still existing violations of the ADA. The Court

21  has granted summary judgment in favor of Plaintiff as to three alleged noncompliant aspects of the

22  store: the point of sale counter, the exterior seating, and the restroom. Defendant does not argue

23  that Plaintiff would not be entitled to damages under the Unruh Act for violations of the ADA that

24  were not remedied by the September and October 2014 renovations. The Court therefore denies

25  Defendant's motion for summary judgment as to damages.

26      In the instant case, the Court finds that Plaintiff has sufficiently shown both ongoing and

27  21

United States District Court
Northern District of California

28  Case No.: 13-CV-00734-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    past violations of the ADA. Moreover, Plaintiff has also shown that he suffered embarrassment

2    because he was unable to order, pay for, or reach for his drink, and encountered barriers in the

3    path of travel from the parking space to the store. *See* Pl. MSJ at 22–23; Kalani Decl. ¶¶ 11–12

4    (describing humiliating experience). As such, Plaintiff is entitled to damages under the Unruh Act.

5    *See* Cal. Civ. Code §§ 51(f), 55.56. Plaintiff seeks only $4,000, which the Court awards.

6    **IV. CONCLUSION**

7         For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment.

8    The Court GRANTS in part and DENIES in part Plaintiff's motion for summary judgment as

9    follows:

10        The Court GRANTS Plaintiff's motion for summary judgment that Defendant's point of

11   sale counter does not comply with the 2010 Standards.

12        The Court DENIES Plaintiff's motion for summary judgment that Defendant's exterior

13   ramp does not comply with the 2010 Standards.

14        The Court GRANTS Plaintiff's motion for summary judgment that Defendant's exterior

15   seating area does not comply with the 2010 Standards.

16        The Court DENIES Plaintiff's motion for summary judgment that Defendant's interior

17   seating area does not comply with the ADA.

18        The Court DENIES Plaintiff's motion for summary judgment that Defendant's fire

19   extinguisher approach area does not comply with the 2010 Standards.

20        The Court GRANTS Plaintiff's motion for summary judgment that Defendant's restroom

21   does not comply with the 2010 Standards.

22        As Plaintiff has prevailed in showing violations of the ADA, Plaintiff is also entitled to

23   damages under the Unruh Act. The Court awards Plaintiff the requested award of $4,000. Plaintiff

24   is also entitled to injunctive relief as to his claims regarding the point of sale counter, the exterior

25   seating area, and the restroom.

26

27                                                                22

28   Case No.: 13-CV-00734-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    **IT IS SO ORDERED.**

2    Dated: February 25, 2015

3

4                                                    LUCY H. KOH
                                                     United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                        23