UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT KALANI,<br><br>Plaintiff,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | Case No.13-CV-00734-LHK<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This case centers on a dispute between Robert Kalani ("Plaintiff") and Starbucks Corporation ("Defendant") regarding the use of Defendant's interior wheelchair accessible tables at Starbucks Coffee store number 6931 ("Store"). Plaintiff claims that Defendant's orientation of the Store's interior accessible tables violates 42 U.S.C. § 12182 ("Title III") of the Americans with Disabilities Act ("ADA") by requiring individuals in wheelchairs to be seated facing the wall with their backs to the inside of the Store. Particularly, Plaintiff claims the orientation of the interior accessible tables violates 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii) and 12182(b)(1)(B). Joint Pretrial Statement, ("JPS"), ECF No. 90 at 6. Plaintiff seeks attorney's fees, costs, litigation expenses, and an injunction requiring Defendant to locate at least one interior accessible table such that an individual in a wheelchair can be seated facing the inside of the Store rather than the wall. JPS at

3. Defendant's position is that the interior accessible tables do not violate any regulations set out by the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and thus do not violate the ADA as a matter of law. JPS at 7; *see also* ECF No. 94, at 1–2 ("Defendant's Trial Brief").

The Court held a bench trial in this matter on June 25, 2015. Plaintiff served as his own witness at trial. Defendant's witness at trial was expert Kim R. Blackseth. Based on the trial and the full record in this matter, the Court issues the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

The parties stipulated to the following undisputed facts:

1. Plaintiff, a resident of Ione, California, ECF No. 75-2 ¶ 15, ("Kalani Decl."), is mobility impaired and uses a wheelchair, ECF. No. 75-6 at 2, ("Stipulation").
2. On January 31, 2013, Plaintiff visited the Starbucks Coffee Store #6931, located at 1228 Camden Avenue in Campbell, California ("Store"). Stipulation at 2.
3. Defendant operates the Store, located in Campbell, California. Stipulation at 2.
4. The Store is a public accommodation. *Id.*
5. "[Defendant] offers a variety of seating options to able-bodied patrons inside the Store." JPS at 3.
6. "Seating is one of the goods and services offered by [Defendant] to its patrons." *Id.*
7. "There are two accessible tables in the interior of the Store located adjacent to each other. These two tables comply with all access requirements in terms of dimensions and approach for patrons who use a wheelchair. One table is identified with an "ISA" symbol. The other table is a bench style table that is not marked by an "ISA." *Id.*
8. "Both interior accessible tables at the Store require an individual in a wheelchair to sit with his [or her] back to the Store's interior and face a wall." *Id.*
9. "Patrons who do not use wheelchairs are afforded seating which allows them to

       look out at the ongoings of the Store, the Store's décor, and provide a full view of other patrons and employees within the Store." *Id.* at 4.

10. "[Defendant] encourages the consumption of food and drinks inside the Store by providing an inviting environment including Wi-Fi, music, and a nice décor. The Starbucks environment is part of the goods and services [Defendant] offers." *Id.*

11. "[Defendant] strives to provide a vibrant and inviting space for its customers." *Id.*

12. "[Defendant] encourages a sense of community for patrons at its Store." *Id.*

13. "[Defendant] offers a welcoming environment for individuals who wish to be part of a community, even when visiting the Store alone." *Id.*

14. "[Defendant] brands itself as a place for people to come together and that it is a 'neighborhood gathering place.'" *Id.*

15. "[Defendant] markets that it offers not just coffee, but a 'full and rewarding coffeehouse experience' as part of its goods and services." *Id.*

In addition to these stipulated, undisputed facts, the parties also stipulated to the admissibility and authenticity of four photographs. *See id.* The Court admitted the following exhibits into evidence at trial.

16. Plaintiff's Exhibit 1 "is a true and correct depiction of the two accessible tables at the Store (although only a portion of the second accessible "bench style" table is shown)."

17. Plaintiff's Exhibit 2 is "a true and correct depiction of the Store which was taken by Plaintiff's expert and shows that on the day the photograph was taken, all patrons shown chose to sit with their backs to the wall, rather than facing the wall, which is a typical seating choice when individuals visit the Store alone." *Id.*

18. Defendant's Exhibit A is "a true and correct depiction of one of the two accessible tables at the Store. This table is identified by the International Symbol of Accessibility ('ISA') (indicia depicting an individual in a wheelchair)" *Id.*

19. Defendant's Exhibit B is "a true and correct depiction of the other accessible table

that offers bench style seating." *Id.*

Moreover, the Court also makes the following findings of fact based on the testimony presented at trial.

20. Plaintiff has returned to the Store on at least four occasions since his first visit on January 31, 2013. *See* Trial Transcript in *Kalani v. Starbucks Corporation*, No. 13-CV-00734-LHK at 26:3–5, 33:21–22, ("Trial Tr.").

21. Plaintiff was accompanied by his wife on each of his visits to the Store. *Id.* at 26:11–12.

22. Plaintiff enjoys people watching and conversing with strangers. *Id.* at 16:8–17:10; 19:4–17.

23. Plaintiff wishes to "commune and interact with other people" when Plaintiff visits the Store with his wife. *Id.* at 32:1–6.

## II. CONCLUSIONS OF LAW

In their joint pretrial statement and at trial, the parties agreed that the only legal dispute was whether Title III of the ADA requires Defendant to locate at least one interior accessible table such that an individual in a wheelchair is not required to sit facing the wall with his or her back to the interior of the Store. JPS at 6–7. The Court begins with a discussion of the underlying purposes of Title III before turning to Plaintiff's standing to bring a Title III claim. The Court will then address whether (1) Plaintiff must show an ADAAG violation; and (2) Defendant violated Title III's Sections 12182(b)(1)(A)(ii), (iii) or 12182(b)(1)(B). Finally, the Court will turn to Plaintiff's request for injunctive relief.

### A. Americans with Disabilities Act

#### 1. Title III

The ADA was enacted in response to a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id.* (internal

citations omitted). Title III establishes a "[g]eneral rule" that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Specifically, Title III prohibits places of public accommodation from providing disabled individuals with "goods, services, facilities, privileges, advantages, or accommodations" that are not equal to, or are different or separate from those provided to other individuals. 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii). Title III also requires "[g]oods, services, facilities, privileges, advantages, and accommodations" be provided to individuals with a disability "in the most integrated setting appropriate to the needs of the individual." *Id.* § 12182(b)(1)(B). As the Ninth Circuit explained in *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011),

> The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

Indeed, the plain meaning of Title III's language is "that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000).

Congress tasked the Attorney General with the responsibility of promulgating Title III's implementing regulations. *See* 42 U.S.C. § 12186(b) (directing the Attorney General to "issue regulations . . . to carry out the provisions of" Title III). The resulting ADAAG, often referred to as the guidelines, specify the "technical structural requirements" of public accommodations and are applicable "during the design, construction, and alteration of such buildings and facilities . . . under the [ADA]." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080–81 (9th Cir. 2004).

5

Case No.13-CV-00734-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

### 2. Standing

Although the ADA's purpose is "sweeping," and its mandate "comprehensive," the statute's reach is "not unlimited." *Chapman*, 631 F.3d at 946 (citation omitted). A plaintiff claiming discrimination under Title III must "satisfy the case or controversy requirement of Article III by demonstrating his [or her] standing to sue at each stage of the litigation." *Id.* Because injunctive relief is the only available remedy under Title III, a plaintiff claiming discrimination under Title III "must not only demonstrate the familiar requirements for standing—injury-in-fact, traceability, redressability—but also 'a sufficient likelihood that he [or she] will be wronged again in a similar way.'" *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) (quoting *Fortyune*, 364 F.3d at 1081). In other words, a plaintiff must face a "real and immediate threat of repeated injury." *Id.* Courts are to take a "broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039–40 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

Here, while Defendant did not explicitly raise a standing challenge at trial, Defendant did contest Plaintiff's standing to seek injunctive relief at the summary judgment stage. The Court previously determined that Plaintiff satisfied the requirements for standing in its order on the parties' cross motions for summary judgment. *See* ECF No. 82 at 21, ("MSJ Order"). First, Defendant did not dispute that Plaintiff has satisfied the Article III standing requirements of injury-in-fact, traceability, and redressability. *See* ECF No. 78 at 3; MSJ Order at 19. Second, the Court concluded that Plaintiff had put forth evidence showing that Plaintiff is likely to suffer future injury. *See* MSJ Order at 20–21. Specifically, Plaintiff has provided evidence that he intends to return to the Store, Kalani Decl. ¶ 17, and frequently visits the area where the Store is located in order to meet with his attorney, visit family, and attend a yearly "Abilities Expo," *id.* ¶ 15. *See* MSJ Order at 20–21 (citing *Doran*, 524, F.3d at 1037–38; *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008)). At trial, Plaintiff provided further testimony

indicating that he enjoys visiting Defendant's stores and discussed his prior visits to the particular Store at issue. *See also* Trial Tr. at 32:3–6; 33:1–3, 21–24 (Plaintiff's testimony regarding his prior "four or five" visits to the Store and his fondness of Defendant's products and stores). The Court finds that Plaintiff has put forth evidence showing injury-in-fact, causation, redressability, and a likelihood of future injury. Plaintiff thus has standing to bring a claim under Title III and to seek injunctive relief.

### B. Plaintiff's Title III claims

To establish a discrimination claim under Title III, Plaintiff must show that (1) he is disabled within the meaning of the ADA; (2) Defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the Plaintiff was denied full and equal treatment by Defendant because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). There is no dispute in the instant case that Plaintiff is disabled within the meaning of the ADA or that Defendant is a private entity that operates a place of public accommodation. The Court must therefore determine whether Plaintiff was denied full and equal treatment by Defendant because of his disability.

#### 1. ADAAG and ADA Claims

Defendant's primary argument at trial was that Plaintiff must show an ADAAG violation in order to maintain a claim of discrimination under Title III. *See* JPS at 7; Trial Tr. at 56:2–5 (direct examination of Defendant's expert witness: Q. Is there any federal access requirement that covers the placement of a disabled seat that you're aware of? A. Only that it would be an integrated setting. Other than that, I don't recall there's any requirement."); Defendant's Trial Brief at 1–2 (requesting the Court *sua sponte* dismiss action as there was no applicable ADAAG regulation). In addition to eliciting expert testimony on the issue of whether any accessibility guidelines governed the location or orientation of accessible tables, Defendant also argued that "the most important stipulation" was that the "table that's offered at this location do[es] comply with access regulations . . . . that's where the Court's inquiry ends . . . ." Trial Tr. at 66:11–15. Indeed, Defendant moved for a nonsuit during trial based on the absence of an applicable ADAAG

7
Case No.13-CV-00734-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1   guideline. Trial Tr. at 34:22–35:9 ("[T]he defense would like to move for a non-suit pursuant to
2   Rule 52, subsection (c).")

3         The parties do not dispute that the interior accessible tables do not violate any accessibility
4   standards set out by the ADAAG. *See* Trial Tr. at 9:22–10:1. Instead, the operative issue is
5   whether Plaintiff's inability to identify a particular regulation governing the orientation of the
6   interior accessible table precludes Plaintiff from asserting a discrimination claim under Title III of
7   the ADA. For the reasons discussed below, the Court concludes that Defendant's position is
8   incorrect as a matter of law, and that Plaintiff may state a discrimination claim under Title III
9   under the circumstances presented in the instant case.

10         Here, the Court finds that the Ninth Circuit has previously rejected Defendant's position.
11   More specifically, the Ninth Circuit rejected the argument that "ADA plaintiffs must prove the
12   defendant contravened a 'specific requirement of the ADAAG," to establish a violation of the
13   ADA." *Fortyune*, 364 F.3d at 1085. Instead, the Ninth Circuit identified two groups of Title III
14   claims: those "involving the *design* of public accommodation" and those "concern[ing] a public
15   accommodation's policy regarding the *use* of that design." *Id.* at 1085. Claims regarding the
16   design of public accommodation, e.g., claims involving design elements controlled by the
17   ADAAG, require a showing of an ADAAG violation. *See id.* at 1084–85 (finding that it is
18   "necessary" to look to the ADAAG guidelines for claims involving the design of public
19   accommodation); *see also Kohler v. In-N-Out Burgers*, No. CV 12-5054-GHK JEMX, 2013 WL
20   5315443, at *3 (C.D. Cal. Sept. 12, 2013) ("A facility that adheres to the [ADAAG] Standards . . .
21   will not be subject to liability under the ADA for any architectural elements covered by the
22   Standards."). In contrast, for claims regarding a public accommodation's policies or practices with
23   respect to the "use" or "operation" of a design element, such as seating, "the task of defining a
24   plaintiff's burden under the ADA is handled by 42 U.S.C. § 12182." *Fortyune*, 364 F.3d at 1085.

25         This distinction between claims governed by the ADAAG and those governed by § 12182
26   accords with the wider purposes of the ADA as well as the ADAAG. In order to give the ADAAG
27   meaning and provide an incentive for public accommodations to abide by its standards, there is a

28

8
Case No.13-CV-00734-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

need for a safe-harbor from ADA claims implicating regulated design elements. *See, e.g.*, *Kohler*, 2013 WL 5315443, at *3 ("Full compliance with the ADA Standards, on the other hand, 'act[s] as a safe harbor' . . . for any architectural elements covered by the Standards." (quoting *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 727 (D. Or. 1997)). This does not, however, address those situations where an ADA plaintiff may encounter discrimination with respect to aspects of public accommodations that are not specifically governed by an ADAAG regulation.

Contrary to Defendant's position, mere compliance with applicable ADAAG regulations does not preclude the possibility that a place of public accommodation may deny an individual the "full and equal enjoyment" of the goods or services the public accommodation provides. For instance, in *Fortyune*, the Ninth Circuit rejected the defendant movie theatre's argument that a violation of a specific ADAAG regulation is a prerequisite to an ADA claim. 364 F.3d at 1085. In *Fortyune*, the plaintiff, confined to a wheelchair, was unable to watch a film next to his spouse because the "companion" seat located next to a wheelchair space was occupied by a "non-companion." *Id.* at 1079. The *Fortyune* plaintiff did not dispute that the defendant complied with the ADAAG requirement that a "companion" seat exist. *See* ADAAG Rule 221.3 ("Companion Seats. At least one companion seat complying with 802.3 shall be provided for each wheelchair space required by 221.2.1."). Instead, the plaintiff challenged the defendant's policy of not relocating moviegoers when screenings were sold out, as that policy prevented the plaintiff from being seated next to his spouse. *Id.* The Ninth Circuit explicitly rejected the defendant's argument that the plaintiff needed to "establish that the Theater fails to comply with the specific requirements of the ADAAG." *Id.*

Moreover, the Ninth Circuit concluded that the plaintiff's claim was not aimed at a regulated aspect of a design or architectural element, e.g., the existence or number of "companion" seats, but rather at the defendant's use of or policy regarding the seats. *Id.* at 1085. The Ninth Circuit further held that "in cases . . . which concern a public accommodation's policy regarding the *use* of that design . . . the provisions of the ADAAG are not controlling." *Id.* Accordingly, the court held that "the defendant discriminated against the plaintiff based upon the plaintiff's

9

disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Id.* (citing 42 U.S.C. §§ 12182(a), (b)(2)(A)(ii)); *see also Celano v. Marriott Int'l, Inc.*, No. C 05-4004 PJH, 2008 WL 239306, at *14 (N.D. Cal. Jan. 28, 2008) (citing *Fortyune* and finding that "plaintiffs' ADA claim may go forward as a general ADA anti-discrimination claim in the absence of specific ADAAG standards or other DOJ implementing regulations.").

Similarly, in *Baughman v. Walt Disney World Company*, 685 F.3d 1131, 1135 (9th Cir. 2012), the Ninth Circuit looked beyond the ADAAG's requirements,[1] concluding that "[p]ublic accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience." In *Baughman*, the plaintiff challenged Disneyland's policy of banning two-wheeled vehicles such as the Segway that the plaintiff claimed she needed to move about the park. As the plaintiff's claim related to the Park's policy rather than a design or architectural element, the *Baughman* court, like the court in *Fortyune*, considered whether the defendant discriminated against the plaintiff under § 12182(b)(2)(A)(ii) by failing to make a requested reasonable modification that was necessary to accommodate the plaintiff's disability. 364 F.3d at 1134–37. In doing so, the Ninth Circuit held that "[t]he ADA guarantees the disabled more than mere access to public facilities; it guarantees them 'full and equal enjoyment.'" *Id.* at 1135 (citing *Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.*, 339 F.3d 1126 (9th Cir. 2003)).

In the instant case, like the cases discussed above, Plaintiff does not challenge Defendant's compliance with ADAAG governed elements of a building's design, but instead challenges Defendant's prevention of the plaintiff's "full and equal enjoyment," 42 U.S.C. § 12182(a), of the

---

[1] The Ninth Circuit did note that "[o]ur conclusion is supported by regulations recently promulgated by the" DOJ. 685 F.3d at 1136. Those regulations governing mobility devices requires public accommodations to make "reasonable modifications in its policies, practices, or procedures to permit the use of other power-driven mobility devices" unless there are "legitimate safety requirements." 28 C.F.R. § 36.311. The Court notes that this additional support was not necessary to the Ninth Circuit's conclusion that the plaintiff could state a claim under § 12182(b)(2)(A)(ii) in *Baughman*.

goods and services that Defendant offers. *See Fortyune*, 364 F.3d at 1085; *Baughman*, 685 F.3d at 1135. Although Plaintiff's claim involves a regulated design element in so far as the ADAAG prescribes certain height and width requirements for accessible tables, Plaintiff's claim is not about the design of the accessible tables, but rather Defendant's operational use of those tables. Like the plaintiffs in *Baughman* and *Fortyune*, Plaintiff claims that Defendants' use, policy, and practice with respect to its interior accessible tables prevent Plaintiff from having "full and equal enjoyment," 42 U.S.C. § 12182(a), of Defendant's goods and services by depriving Plaintiff of an "experience comparable to that of able-bodied patrons," *Baughman*, 685 F.3d at 1135; *see* Trial Tr. at 78:24–79:4.

Accordingly, the Court finds that Plaintiff does not need to show a violation of the ADAAG to state a claim under the ADA. *See Fortyune*, 364 F.3d at 1085; *Baughman*, 685 F.3d at 1135. Instead, Plaintiff may state claims under the antidiscrimination provisions of Title III of the ADA. *See Celano*, 2008 WL 239306, at *14.

### 2. Statutory ADA violation

The Court now turns to the specific statutory provisions under which Plaintiff brings his claims against Defendant. Plaintiff claims that Defendant's use of the interior accessible tables violates 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii), and 12182(b)(1)(B). *See* JPS at 6; ECF No. 99 at 5, ("Plaintiff Trial Br."). The Court addresses these statutory provisions below.

#### a. 42 U.S.C. § 12182(b)(1)(A)(ii)

Title III states that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii). This prohibits public accommodations from providing an experience that is not "functionally equivalent" to that afforded to non-disabled patrons. *See Celano*, 2008 WL 239306, at *14.

The parties in the instant case have stipulated that Defendant's goods and services include seating, the "Starbucks environment," and a "full and rewarding coffeehouse experience." JPS at

11

Case No.13-CV-00734-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

3–4. Defendant has also stipulated to the fact that the only accessible seating in the Store requires individuals in wheelchairs to sit with their backs to the interior of the Store. *See id.* at 3. The Court therefore addresses whether Defendant has provided an "opportunity to participate in or benefit from [the "Starbucks environment," "coffeehouse experience," and seating] . . . that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

In order to determine whether Defendant provided disabled patrons with an opportunity to participate in or benefit from Defendant's goods or services that was functionally inequivalent to those afforded to non-disabled patrons, the Court must consider how non-disabled patrons use the Store. *See Baughman*, 685 F.3d at 1135. Here, Defendant has stipulated that the "Starbucks experience" includes the Store's décor and an opportunity "to be part of a community, even when visiting the Store alone." JPS at 4. Defendant "brands itself as a place for people to come together" and encourages its patrons to use the Store as a "neighborhood gathering place." *Id.* at 4. One of the benefits of such a social hub is undoubtedly the ability to see and interact with others in the community. The parties have also stipulated that non-disabled patrons are able to sit such that they "look out at the ongoings of the Store, the Store's décor, and . . . other patrons and employees within the Store," and that Defendant "encourages a sense of community for patrons." *Id.* The photograph in Plaintiff's Exhibit 2, while only a snapshot of the Store and its patrons on a particular day, depicts four patrons at the Store, all of whom are voluntarily seated facing the interior of the Store with their backs to the wall. *Id.* at 4.

Whether or not a non-disabled patron will normally choose to sit facing the interior of the Store, Defendant cannot contest that it offers non-disabled patrons the *choice* of whether to capitalize on the opportunity to be part of the community that the "Starbucks environment" provides. In contrast, Defendant denies patrons in wheelchairs that same choice, as Plaintiff was forced to turn his back on the Store. Defendant therefore placed Plaintiff in "a distinctly unequal situation." *Celano*, 2008 WL 239306, at *14 (finding ADA violation where defendant provided golf carts for non-disabled patrons but failed to do so for mobility impaired golfers). While non-disabled patrons may sit facing their fellow patrons and enjoy the sense of community that is

12

expected from the "full and rewarding coffee house experience," *id.*, Plaintiff was forced to face the wall. Defendant therefore discriminated against Plaintiff by providing Plaintiff an opportunity to participate in and benefit from the "Starbucks environment" that was not equal to that afforded to other individuals. *See* 42 U.S.C. § 12182(b)(1)(A)(ii).

Defendant argues that Plaintiff has not been afforded an unequal opportunity because Plaintiff may sit with his spouse and thus has not been "excluded from any conversation" and forced to sit in isolation. Trial Tr. at 13:3–7; *see also id.* at 24:4–6, 26:11–12, 64:24–65:11. This, however, is irrelevant. Defendant has stipulated that the "Starbucks environment" may be enjoyed both alone and with company. *See* JPS at 4 (stipulating that Defendant "offers a welcoming environment for individuals who wish to be part of a community, *even when visiting the Store alone*") (emphasis added). The ability to sit with one's spouse thus cannot be said to encompass all that the "Starbucks environment" has to offer.

In another store "environment" case, the Ninth Circuit concluded that a physical barrier which prevented disabled customers from "having the experience of non-disabled customers of fully participating in the selection and preparation of their order at the food preparation counter . . . subject[ed disabled patrons] to a disadvantage that non-disabled customers do not suffer." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1173 (9th Cir. 2010). While *Antoninetti* dealt with an ADAAG regulation requiring a public accommodation to provide "equivalent facilitation" for certain counter heights, the crux of the plaintiff's claim was that non-disabled patrons were afforded the opportunity to "enjoy the 'Chipotle experience,'" whereas disabled patrons "could not see and evaluate the various available foods and decide which or how much of each" they might want. *Id.* at 1174. Relying on the ADAAG requirement that defendant provide a "substantially equivalent" experience, the Ninth Circuit concluded that the defendant's provision of an unequal experience violated the ADA. *Id.* Here, as in *Antoninetti*, there is no dispute that Defendant's provision of a specific type of store experience is an integral part of the goods or services that Defendant provides. *See id.* at 1174; JPS at 3–4. Plaintiff, like the *Antoninetti* plaintiff, "wants to be about to have the '[Starbucks] experience' . . . [and] enjoy the

13
Case No.13-CV-00734-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

same experience that other non-disabled [Starbucks] customers could have." *See Antoninetti*, 643 F.3d at 1175. Defendant's decision to orient the interior accessible tables such that non-disabled patrons are unable to "fully participat[e]" in the "Starbucks experience" is a "disadvantage that non-disabled customers do not suffer." *Id.* at 1173.

In conclusion, the Court finds that Defendant, through the orientation and positioning of its interior accessible tables, has afforded Plaintiff an opportunity to both participate in and benefit from the abovementioned goods and services that was "not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii). This constitutes discrimination under Title III of the ADA. *See id.*

### b. 42 U.S.C. §§ 12182(b)(1)(A)(iii) and 12182(b)(1)(B)

As part of the joint pretrial statement, Plaintiff cited §§ 12182(b)(1)(A)(iii) and 12182(b)(1)(B) as additional bases for his ADA claim against Defendant.[2] The Court addresses Plaintiff's ADA claim pursuant to these two provisions below.

Under § 12182(b)(1)(A)(iii), it is discriminatory to provide an individual, on the basis of a disability, with a good or service "that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual . . . with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others." Title III further mandates that "[g]oods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual." 42 U.S.C. § 12182(b)(1)(B). In other words, goods and services must be provided in "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592 (1999) (quoting 28 C.F.R. pt. 35, app. A (1998)). Indeed, "[p]roviding

---

[2] While cited in the Joint Pretrial Statement, the Court notes that Plaintiff did not identify this particular statutory provision as a basis for Plaintiff's claim when questioned at trial. *See* Trial Tr. at 42:4–24 (agreeing that Plaintiff's claims relied on 42 U.S.C. § 12182(b)(2)(A)(ii) and 42 U.S.C. § 12182(a). In the interest of thoroughness, however, the Court addresses Plaintiff's claims under these provisions.

services in the most integrated setting is a fundamental principle of the ADA." House Report, Pt. II at 385. As the Department of Justice has described it:

> Taken together, [§ 12182(b)(1)(A)(iii) and § 12182(b)(1)(B)] are intended to prohibit exclusion and segregation of individuals with disabilities and the denial of equal opportunities enjoyed by others, based on, among other things, presumptions, patronizing attitudes, fears, and stereotypes about individuals with disabilities.

28 C.F.R. pt. 36, app. C (2011).

Here, the gravamen of Plaintiff's argument is that "[p]roviding seating that faces a wall physically separates wheelchair patrons from the community promoted by Starbucks (indeed requires them to literally turn their backs on the community), deprives wheelchair patrons of the "Starbucks experience," and is therefore not equivalent to the seating provided to non-disabled patrons." JPS at 7. As discussed above, the "Starbucks environment," a "full and rewarding coffeehouse experience," and seating are all goods and services that Defendant provides. *See* JPS at 4. In defining discrimination as including the provision of unequal "different or separate" services, the ADA Committee Reports detail that the Act was instituted in part to address the concern that:

> [P]ersons with disabilities have been relegated to separate and often inferior services. For example, seating for persons using wheelchairs is often located in the back of auditoriums. In addition to providing inferior seating, the patron in a wheelchair is forced to separate from family or friends during the performance. . . . The availability of a choice of seating is critical to assure that patrons with disabilities are not segregated from family or friends.

H.R. REP. No. 101-485, pt. 2, at 102 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 385–86 ("House Report, Pt. II"). Plaintiff contends that Defendant's provision of "different or separate" goods or services also, in this context, necessarily entails a failure to provide goods or services that are "integrated and equal in quality to those provided to the general public." 28 C.F.R. pt. 36 (2011). The Court agrees.

In the instant case, Defendant has not contested that Plaintiff affirmatively wants the opportunity to experience and engage in the "Starbucks experience" in the same way that non-disabled patrons have the choice of doing. *See* Trial Tr. at 16:8–17:10; 19:4–17 (Plaintiff's

15
Case No.13-CV-00734-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

testimony describing his desire to "people watch" and strike up conversations with strangers). As in *Fortyune*, where the court noted that moviegoers expect to sit with loved ones as an integral part of the movie viewing experience, *see* 364 F.3d at 1083, here the Court notes that the parties have stipulated to the undisputed fact that participating in the "full and rewarding coffeehouse experience" and the unique Starbucks community are integral to the goods and services that Defendant provides to its patrons. Like denying persons in wheelchairs an experience comparable to that expected and enjoyed by non-disabled moviegoers, here Defendant has denied Plaintiff the opportunity to enjoy the décor and sense of community expected from a "full and rewarding coffeehouse experience" and the "Starbucks environment," which Defendant provides to non-disabled patrons. *See id.* By denying Plaintiff "[t]he availability of a choice of seating," House Report, pt. II at 386, Defendant has provided a "different or separate" good or service than that which is provided to non-disabled patrons that are not "integrated and equal in quality to those provided to the general public." 42 U.S.C. § 12182(b)(1)(A)(iii); 28 C.F.R. pt. 36.[3] Taking §§ 12182(b)(1)(A)(iii) and 12182(b)(1)(B) together, the Court finds that Defendant's use of interior accessible tables in such a way that excludes disabled patrons from enjoying and interacting with the "Starbucks community" and "experience" constitutes discrimination under the ADA.

    In sum, the Court finds that Defendant's operational use of the interior accessible tables in the Store, which forces disabled patrons to sit with their backs to the Store, constitute discrimination under 42 U.S.C. §§ 12182(b)(1)(A)(iii) and 12182(b)(1)(B). Plaintiff is a social individual who enjoys people watching and conversing with strangers. *See* Trial Tr. at 16:8–17:10; 19:4–17. Plaintiff wished to spectate and contribute to the "Starbucks environment" and "coffeehouse experience," *id.* at 32:1–6, during his visits to the Store. *See id.* at 16:8–17:10; 19:4–

---

[3] There is a narrow exception to Section 12182(b)(1)(A)(iii), where the provision of different or separate goods or services is permissible as long as there is (1) a separate arrangement or facility, which (2) is necessary for the disabled person, and (3) is "as effective as" that for which it was substituted. *Lockett v. Catalina Channel Exp., Inc.*, 496 F.3d 1061, 1065 (9th Cir. 2007). Defendant did not argue that this exception applies, nor did Defendant put forth any evidence in support of such an exception.

17; 32:1–6. By hindering Plaintiff's ability to do so, the discriminatory use of the Store's interior accessible tables significantly reduced Plaintiff's ability to enjoy the "Starbucks environment," "coffeehouse experience," and seating Defendant provides. Thus, Defendant discriminated against Plaintiff on the basis of his disability in the "full and equal enjoyment of the goods" and services of the Store. Accordingly, Defendant violated Title III of the ADA.

### C. Injunctive relief

Remedies under the ADA are available "to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter." 42 U.S.C. § 12188(a)(1). The cited provision of the Civil Rights Act states that a "person aggrieved" by a violation of the ADA may bring "a civil action for preventive relief, including an application for a permanent or temporary injunction." 42 U.S.C. § 2000a-3(a). The ADA states that, in Title III cases:

> [I]njunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2). The ADA provides only for injunctive relief; "it does not authorize a claim for money damages." *Antoninetti*, 643 F.3d at 1174.

In the instant case, Plaintiff seeks injunctive relief requiring Defendant to "locate at least one accessible table such that an individual in a wheelchair can be seated with a view of the Store and its patrons" rather than facing the wall. JPS at 3. As the Court has found that Defendant's use of the interior accessible tables is discriminatory under Title III, Plaintiff is entitled to injunctive relief remedying Defendant's discriminatory practice. *See Long v. Coast Resorts, Inc.*, 267 F.3d 918, 925–26 (9th Cir. 2001); *Antoninetti*, 643 F.3d at 1175–76 ("'The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief.'" (quoting *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001)).

The Court notes that Defendant has made vague remarks regarding space concerns and Plaintiff's alleged failure to provide Defendant with a "workable" plan for how to alter the orientation of the interior accessible tables. Under the ADA, a public accommodation may be required to make reasonable modifications to its policies, practices, or procedures to mitigate any disparate impact upon persons with disabilities. 28 C.F.R. § 36.302(a); *see also Celano*, 2008 WL 239306, at *18. At trial, Defendant argued that if it "were to move th[e] existing table forward, [Defendant] would have to provide the requisite five feet or whatever dimensions behind that location for a person to have the proper clearance space and other necessary items to get into that seat coming from that back approach." Trial Tr. at 45:22–46:15. This, Defendant argues, would be unwieldy and "impede on the access that's there." *Id.* at 23:7. As Plaintiff noted, Defendant failed to raise this issue in the joint pretrial statement, and Plaintiff could have reasonably relied on Defendant's failure to identify this as a disputed legal issue. *See United States v. First Nat. Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981) ("Unless pretrial orders are honored and enforced, the objectives of the pretrial conference to simplify issues and avoid unnecessary proof by obtaining admissions of fact will be jeopardized if not entirely nullified. Accordingly, a party need offer no proof at trial as to matters agreed to in the order, nor may a party offer evidence or advance theories at the trial which are not included in the order or which contradict its terms.").

Even assuming Defendant had properly raised the issue of reasonableness, the Court notes that Defendant's own expert witness Mr. Blackseth testified that at least one of the interior accessible tables already has sufficient clearance space behind it to allow a patron in a wheelchair to maneuver behind the table. Trial Tr. at 57:18–25. This suggests that Defendant need only turn the table such that the accessible space is located where the companion seat is currently located and that accommodating Plaintiff's request would not impose any particular hardship or cost on Defendant and is a feasible modification. Accordingly, the Court finds that the only evidence in the record indicates that the requested injunctive relief is reasonable.

### III.  CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff prevails on his claim that

Defendant has violated Title III of the ADA. Specifically, the orientation of the interior accessible tables in the Store violated 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii), and 12182(b)(1)(B). The Court therefore GRANTS Plaintiff's request for injunctive relief requiring Defendant to locate at least one interior accessible table, in compliance with all applicable regulations, guidelines, and statutes, such that an individual in a wheelchair can be seated facing the interior of the Store with his or her back to the wall.

Plaintiff shall file any motion for attorney's fees and costs within 30 days of this Order. Any opposition and reply shall be filed in accordance with the Civil Local Rules.

**IT IS SO ORDERED.**

Dated: July 28, 2015

_____
LUCY H. KOH
United States District Judge

Case No.13-CV-00734-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW